UNITED STATES of America, Appellee,

v.

William Joseph SHEEHAN,
Defendant, Appellant.

No. 78–1011.

United States Court of Appeals,
First Circuit.

Submitted May 26, 1978.

Decided Sept. 6, 1978.

Thomas C. Troy, Dorchester, Mass., on brief, for defendant, appellant.

Edward F. Harrington, U. S. Atty., and Robert B. Collings, Asst. U. S. Atty., Chief, Criminal Division, Boston, Mass., on brief, for appellee.

Before COFFIN, Chief Judge, CAMP-BELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

Appellant appeals his conviction for bank robbery, asserting reversible error in (1) the admission of a photocopy of a paper found in his wallet which he alleges to have been an unlawful seizure incidental to his arrest and (2) the repeated showing to a witness of an impermissibly suggestive photographic array. The former ground is the only one meriting extended discussion.

On August 19, 1975 at about 3:00 p. m., a bank robbery, in which several men participated, took place in West Yarmouth, Massachusetts. At about 3:15 p. m. appellant, driving a yellow Oldsmobile with the license number ending in digits for which an alert had been broadcast, was stopped by a

Barnstable policeman, Elliott. Elliott obtained defendant's name, radioed to see if defendant was on the "Missing and Wanted" list, advised him of his *Miranda* rights, and told him he was a suspect in a bank robbery investigation. Then having learned that appellant was the subject of an outstanding warrant for a motor vehicle violation, he asked appellant to accompany him to the police station, where he was subsequently placed under arrest.

At the station Elliott searched appellant's wallet and reproduced with a photocopy machine several papers, including a piece of paper bearing several names and telephone numbers, returning the originals to the wallet. Elliott said that while this was not his custom he copied the particular papers for no specific reason "other than it was in his possession". Somewhat more light was shed on the circumstances of the copying by an F.B.I. agent, Palmer, who testified that a policeman, possibly Elliott, had said it might be a good idea to have a copy of the names and telephone numbers. Palmer knew this paper had nothing to do with the motor vehicle violation but said he "[c]ertainly . . . knew why it was being photostated", although, when asked if it were evidence linking appellant to a crime, he conceded, "Not in itself."

After Elliott copied the papers, he gave the copies to an F.B.I. agent. The F.B.I. checked mug shots of the people listed. Ultimately one of the names, James Melvin, proved to be that of a person whose fingerprint was found on a carton in the getaway van known to have been used in the bank robbery. In short, the copied piece of paper was evidence that appellant knew a person linked with the bank robbery.

Appellant concedes, as he must, that his arrest was lawful and that therefore the search of his wallet was legal. But he argues that the seizure [1] of the list of names and telephone numbers was illegal. Had the list been a fruit, instrumentality, or contraband, probative of a crime, though unrelated to that for which appellant had been arrested, he admits that *United States v. Robinson*, 414 U.S. 218, 236, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), and *Gustafson v. Florida*, 414 U.S. 260, 266, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973) would have allowed seizure. Mere evidence of an unrelated crime, however, would not be seizable, despite the fact that in *Warden v. Hayden*, 387 U.S. 294, 301, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), the distinction between "mere evidence" and "instrumentalities, fruits of crime, or contraband" had been abandoned.[2]

Appellant is correct in noting that *Warden v. Hayden, supra*, 387 U.S. at 307, 87 S.Ct. 1642, requires that, as to "mere evidence", probable cause must be examined in terms of "cause" to believe that the evidence sought will aid in a particular apprehension or conviction. In so doing, consideration of police purposes will be required.[3] This requirement would presumably preclude using a legal premises search to justify the photocopying of, say, diaries and correspondence observed during but

1. We are willing for purposes of our analysis in this case to accept this characterization of the effect of using a photocopy. But we are not sure that it should be so dignified. Had an agent remembered the names and numbers, or had he made a few notes, and testified as to his observations, the result would not differ from the introduction in evidence of a photocopy.

2. Appellant draws this distinction because the Court in both *Robinson* and *Gustafson*, at the pages cited, confined permissible seizure in connection with an arrest to fruits, instrumentalities, and contraband, not mentioning "mere evidence".

3. The reference at this point in *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) to *Kremen v. United States*, 353 U.S. 346, 77 S.Ct. 828, 1 L.Ed.2d 876 (1957), is illuminating. In *Kremen* the F.B.I., in arresting several fugitives from justice, searched a remote cabin without a warrant, seized the entire contents of the cabin, 353 U.S. 349–59, 77 S.Ct. 828, and took them 200 miles away to San Francisco for further examination. The Court held that such a seizure and removal "for the purpose of examination are beyond the sanction of any of our cases." *Id.* at 347, 77 S.Ct. at 829. It added, "While the evidence seized from the persons of the petitioners might have been legally admissible, the introduction against each of the petitioners of some items seized in the house in the manner aforesaid rendered the guilty verdicts illegal." *Id.* at 347–48, 77 S.Ct. at 829.

completely unrelated to the objectives of the search. However, the Supreme Court has made it increasingly clear that a lawful arrest justifies a special latitude of both search and seizure of things found on the arrestee's person. *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), indicates to us that this limited nexus requirement is met in the case at bar. In *Edwards* defendant was arrested as a suspect in an attempted break-in. After investigation of the scene revealed that a pry bar had been used on a window, leaving paint chips on the widow sill, the authorities thought it would be a good idea to examine defendant's clothing. Accordingly, some ten hours after arrest, defendant's clothing was taken from him in exchange for new clothing.

■ The court accepted the holding below that there was probable cause to believe paint chips would be discovered on defendant's clothing and held that the delay in taking the clothing did not render the seizure invalid. The significant point in our view is that in *Edwards* it was sufficient for probable cause that the police thought that if defendant had attempted the break-in, paint chips would be found on his clothing.[4] In the case at bar it would seem to be equally respectable police work to assume that checking out known associates of a suspect in a bank robbery committed by several people might yield helpful information. *United States v. Gimelstob*, 475 F.2d 157, 161 (3d Cir. 1973).[5] While the check might prove fruitless, the lead would seem to be one that any careful investigator would follow up. While this rationale for the investigative purpose could have been more clearly put by F.B.I. Agent Palmer, this would seem to be the unarticulated but felt major premise of taking the unusual step of copying the names and telephone numbers in this particular case.

The breadth of the power of warrantless seizure in cases of search incident to lawful arrest is suggested by the concluding passage in *Edwards*, 415 U.S. at 808–09, 94 S.Ct. at 1239:

"In upholding this search and seizure, we do not conclude that the Warrant Clause of the Fourth Amendment is never applicable to postarrest seizures of the effects of an arrestee. [footnote omitted] But we do think that the Court of Appeals for the First Circuit captured the essence of situations like this when it said in *United States v. DeLeo*, 422 F.2d 487, 493 (1970) [footnote omitted]:

'While the legal arrest of a person should not destroy the privacy of his premises, it does—for at least a reasonable time and to a reasonable extent—take his own privacy out of the realm of protection from police interest in weapons, means of escape, and evidence.' "

We therefore conclude that no error was committed in allowing into evidence a photocopy of a paper found in appellant's wallet containing the name and telephone number of a putative bank robber.

■ The issue relating to the photographic displays is not a substantial one. After one spread shown to witness Coale on October 28, 1975, not including a picture of appellant, two more were shown including appellant—six and a half months apart. The witness' selections were not guided by any other person. Cross-examination was vigorous and extensive. We cannot say that the last spread, the focus of attack,

---

4. So also, in a case rather prominently endorsed in *Edwards, United States v. Caruso*, 358 F.2d 184 (2d Cir. 1966), *see, e. g.,* 415 U.S. at 807, 94 S.Ct. 1234, the clothing of a bank robber was seized and given to the F.B.I. for use as evidence, there being no further elaboration as to its specific probative utility.

5. We see no viable limitation of *Edwards* to situations where the probable cause is belief that the thing seized would be evidence of the crime for which a defendant was being held. Indeed a strong signal to the contrary is the approval in *Edwards* of *Charles v. United States*, 278 F.2d 386 (9th Cir. 1960)—a case where a search after arrest related to one crime was in connection with a different crime. 415 U.S. at 808 n. 9, 94 S.Ct. 1234. *See also United States v. Lipscomb*, 435 F.2d 795 (5th Cir. 1970); *United States v. Simpson*, 453 F.2d 1028 (10th Cir. 1972).

was, to use the test articulated in *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968), "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." The jury was entitled to exercise its judgment, as it did.

*Affirmed.*